IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL PARISH, CURTIS L. OATS, LEILA KHOURY, SEAN DRISCOLL, CARLA LOFTON, ROY CLEAVES, LISA BROWN, DAN TAYLOR, DEAN MILLER, KEVIN SANDERS, STACEY CLARK, and CARLOTTE WATSON,<br><br>Plaintiffs,<br><br>vs.<br><br>SHERIFF OF COOK COUNTY and COOK COUNTY, ILLINOIS,<br><br>Defendants. | Case No. 07 4369 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Michael Parish and eleven other plaintiffs have sued the Sheriff of Cook County and Cook County for damages under 42 U.S.C. § 1983. Plaintiffs allege that the defendants maintained a policy or practice of deliberate indifference to their serious medical needs and thus violated their Fourteenth Amendment rights while they were confined at the Cook County Jail (CCJ). Plaintiffs have moved to certify a class action pursuant to Federal Rule of Civil Procedure 23(b)(3). For the reasons stated below, the Court grants plaintiffs' motion

**Facts**

The Court takes the following facts from plaintiffs' Second Amended Complaint. Plaintiffs allege that the defendants have implemented a policy of denying or delaying necessary prescription medication to detainees at CCJ. The policy allows medical

technicians to deny various kinds of necessary prescribed medication solely on the basis of a "brief and cursory interview," without inquiring into a detainee's medical history and without consulting a physician. 2nd Am. Compl., ¶¶ A.c., B.c.

Plaintiffs divide their allegations into two general categories: psychotropic medication and non-psychotropic medication. Specifically, plaintiffs contend that the defendants' policy allows medical technicians to deny prescribed psychotropic medication to detainees after a short interview. Instead, these detainees are routinely given anti-depressants, which are less costly than the psychotropic medications. Several of the plaintiffs reported suffering behavioral problems while on anti-depressants that they had not experienced while taking their prescribed psychotropic medication.

With respect to detainees who have been prescribed non-psychotropic medication, plaintiffs allege that medical histories are taken in overcrowded areas with little privacy. They also allege that the defendants' policy allows medical technicians to discontinue prescribed medications required to prevent serious injury or death. The policy also prohibits physicians at the jail from prescribing medication for chronic pain. Finally, plaintiffs allege that there is no speedy or efficient procedure that allows a detainee to see a physician after a medical technician has denied any form of medication.

Parish alleges that he was transferred to the jail on September 27, 2005 from the Illinois Department of Corrections, where he had received psychotropic medication on a regular basis. Although he arrived at the jail with the medication, the medical technician concluded that Parish should no longer receive the psychotropic medication. Parish tried to obtain the medication for nine months. After an unsuccessful suicide attempt,

Parish was finally prescribed the medication. Parish was released in 2006 but returned to the CCJ in 2007. Although Parish informed the medical technician of his need for psychotropic mediation, the medical technician again denied him the medication. Parish tried repeatedly to see a physician. Only after another unsuccessful suicide attempt was he finally permitted to see a physician who prescribed psychotropic medication.

The remaining plaintiffs all allege that at their intake interviews , they informed medical technicians of their condition and their prescribed medications. Nevertheless, the medical technicians denied them medications prescribed for conditions including mental illness, severe chronic pain, enlarged prostate, heart disease, acid reflux, congestive heart failure, asthma, hepatitis C, and a surgical wound. As a result, the plaintiffs suffered a variety of adverse consequences, including behavioral problems, severe pain, and an infection requiring hospitalization.

Plaintiffs filed suit in August 2007. They contend that defendants implemented a policy or practice at the CCJ of denying necessary prescribed medication in a manner that constitutes deliberate indifference to their serious medical needs, in violation of their Fourteenth Amendment rights. Plaintiffs have moved the Court to certify, under Federal Rule of Civil Procedure 23(b)(3), a class of "all persons confined at the Cook County Jail on and after August 3, 2005 who provided notice that he or she had been taking prescription medication for a serious health need and who was not provided with appropriate medication within 24 hours thereafter."

## Discussion

The Court may certify a case as a class action if the party seeking certification demonstrates that it has met all the requirements of Rule 23(a) and one of the

3

requirements of 23(b). Under Rule 23(a), the party must prove that the class is so numerous that joinder of all members is impracticable; there are questions of law or fact common to the proposed class; the class representatives' claims are typical of the claims of the class; and the representatives will fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a)(1)-(4). In this case, plaintiffs seek certification under Rule 23(b)(3). To succeed, they must show that "questions of law or fact common to the members of the class predominate over any questions affecting individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

Plaintiffs bear "the burden of demonstrating that certification is appropriate." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). The Court need not rely solely on the allegations in plaintiffs' complaint in assessing whether to certify a class, but instead "should make whatever factual and legal inquiries are required under Rule 23." *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675-76 (7th Cir. 2001).

**A.     Numerosity**

Rule 23(a)(1) requires that a class be so numerous that joinder of all its members is impracticable. Courts may not rely on conclusory allegations as to the size of a class or the impracticability of joinder, *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989), and may require that a plaintiff prove class size through affidavits or other evidence. *Szabo*, 249 F.3d at 676. The plaintiff need not, however, specify the exact number of persons in the class. *Marcial*, 880 F.2d at 957.

In this case, the proposed class consists of detainees who requested but were denied necessary prescribed medications while confined at CCJ on or after August 3, 2005. Plaintiffs first based their claim of numerosity on allegations that they had uncovered over 300 additional detainees who filed grievances concerning the denial of prescription medication. Defendants pointed out that there was no evidence that the grievances included people who were similarly situated to plaintiffs.

The Court requested that the plaintiffs submit additional evidence of numerosity. Plaintiffs submitted over 180 affidavits executed by putative class members, an excerpt of a report by the court-appointed monitor in *Duran v. Sheahan*, Case No. 74 C 2949 (N.D. Ill.), a 2008 report by the United States Department of Justice on conditions at CCJ, and the depositions of three former CCJ employees.

Defendants attack the affidavits as "cookie-cutter" documents with only "three or four-line complaints" but make no mention of the other evidence offered. Def. Supp. Resp. at 1. Defendants' argument is unavailing. Other courts have accepted similar affidavits to support numerosity. *See, e.g., Jackson v. Sheriff of Cook County*, No. 06 C 0493, 2006 WL 3718041, at *3 n. 7 (N.D. Ill. Dec. 14, 2006) (finding that the fact that fourteen affidavits submitted in support of class certification contained mostly boilerplate text did not diminish their likely veracity). The affidavits are statements made under oath, and defendants have not produced anything suggesting that they are false or untrustworthy. In addition, the reports by the court-appointed monitor and the Department of Justice reflect that numerous detainees have complained that they have been denied prescription medication. The Court finds the affidavits and the other evidence plaintiffs have submitted sufficient to establish the requisite numerosity.

**B. Commonality**

Rule 23(a)(2) requires the existence of questions of law or fact common to the class. "'A common nucleus of operative facts is usually enough to satisfy the commonality requirement of Rule 23(a)(2).'" *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). A defendant's pattern of standardized conduct generally is sufficient to constitute a common nucleus of operative facts. *Id.*

Plaintiffs contend that there are common questions of law and fact with respect to the existence and the constitutionality of the policy. Defendants argue that determining whether the decision to discontinue particular medications amounts to deliberate indifference requires an individualized inquiry.

Defendants' argument improperly conflates the Rule 23(b)(3) requirement of *predominance* of common issues with the Rule 23(a)(2) requirement of *existence* of common issues. In any event, defendants appear to have misconstrued plaintiffs' claims. Plaintiffs' focus, at least for liability purposes, is on the defendants' alleged policy of allowing unqualified personnel to usurp decisions made by medical doctors and other categorical policies, not on the particulars of individualized decisions. When "defendants have engaged in standardized conduct toward members of the proposed class," the class satisfies Rule 23(a)(2)'s commonality requirement. *Keele*, 149 F.3d at 594.

In this case, plaintiffs have identified two factual and legal issues common to the class: whether defendants enforce the alleged policy and whether that policy violates

the Fourteenth Amendment. A common legal theory is generally sufficient to support commonality. *Id.* Plaintiffs' claims clearly share the same legal theory and therefore meet the commonality requirement. *See Arreola v. Godinez*, --- F.3d ---, No. 07-1700, 2008 WL 4553059 (7th Cir. Oct. 14, 2008) (finding that jail detainees' claims challenging the constitutionality of a medical policy met the commonality requirement); *Young v. County of Cook*, No. 06 C 552, 2007 WL 1238920, at *5 (N.D. Ill. April 25, 2007) (finding commonality requirement satisfied when detainee class challenged the constitutionality of a blanket strip search policy); *Jackson*, 2006 WL 3718041, at *4 (finding that plaintiffs' challenge to jail's standardized STD testing met the commonality requirement even though factual distinctions between class members existed).

**C.     Typicality**

The typicality requirement focuses on "whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). The representatives' claims are "typical if [they] arise[ ] from the same event or practice or course of conduct that gives rise the claims of the other class members and [their] claims are based on the same legal theory." *Id.* Factual distinctions between the representative parties' claims and the class members' claims does not destroy typicality so long as the claims share the same legal theory. *Id.*

Plaintiffs laid out their own factual allegations and later produced 180 affidavits in support of their claim of typicality. Again, defendants' arguments focus on predominance rather than typicality. In essence, they argue that the named plaintiffs'

7

claims vary as to the type of illness complained of and the type of medication at issue. Defendants also contend that medical follow-up differed drastically among the plaintiffs and that these differences destroy typicality.

Between the complaint and the supplemental affidavits, the plaintiffs have met their burden with respect to typicality. Although the affidavits differ with respect to the individual affiants' particular medical needs and prescriptions, each affiant swore that she notified CCJ personnel of her condition and her prescription, and that she either never received the medication or received it days or weeks later. These are precisely the underpinnings of the named plaintiffs' claims. Because the "representatives' claims have the same essential characteristics of the class at large," plaintiffs have satisfied the typicality requirement. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (internal quotation marks and citation omitted).

**D. Adequacy**

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy this requirement, the interests of the representative parties must coincide with those of the rest of the class, and class counsel must be prepared and able to prosecute the action effectively. *See Retired Police Ass'n*, 7 F.3d at 598; *Levie v. Sears, Roebuck & Co.*, 496 F. Supp. 2d 944, 950 (N.D. Ill. 2007)**.**

Defendants do not challenge the adequacy of plaintiffs' counsel, nor do they contend plaintiffs' interests are at odds with those of other class members. Instead, defendants focus their objections on the individual plaintiffs' alleged lack of credibility. In

8

support, defendants list the criminal histories of eight plaintiffs, which include convictions for drug possession, robbery, and theft. Defendants assert that felons cannot be adequate class representatives, but they cite only a Second Circuit decision stating that district courts may consider credibility in adequacy of representation determinations. *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2nd Cir. 1998).

This argument is lacking in merit. Several courts have certified or have approved the certification of classes of prisoner and detainee plaintiffs. *Arreola*, 2008 WL 4553059, at *8-*11; *Jackson*, 2006 WL 3718041, at *5. If defendants were correct, there would be no such thing as a class action in the prison or jail context. In any event, defendants have failed to provide any basis to believe that the named plaintiffs' criminal histories differentiate them from other class members or make their interests different from those of the class as a whole.

**E.     Predominance and superiority**

Rule 23(b)(3) requires the Court to find "that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that the class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Generally, when a class challenges a uniform policy or practice, the validity of the policy or practice tends to be the predominant issue in the ensuing litigation. *See General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 159 n.15 (1982) ("Significant proof that an employer operated under a general policy of discrimination conceivably could justify a class of both applicants and employees."); *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir.

9

1992) (holding that certification was appropriate when plaintiffs alleged that defendant had "an ongoing scheme to defraud and deceive prospective students").

Plaintiffs challenge what they allege are policies and practices applied to the entire detainee population. Defendants contend that a class would be unmanageable because there are too many individual issues. Defendants assert that to determine liability, the Court will have to examine at least nine specific questions, including the relative urgency of each individual's need for medication, whether CCJ personnel were subjectively aware of each individual detainee's serious medical need, and the actual harm suffered by each individual. They maintain that individual determinations are the only way to resolve a deliberate indifference claim.

As the Court previously noted, plaintiffs' claims focus on the policy of allowing CCJ personnel lacking medical degrees to in effect overrule decisions made by medical doctors regarding their patients' medical needs, as well as other allegedly categorically applied policies. Plaintiffs' primary contention is that the creation and execution of these policy amounts to deliberate indifference. In this regard, the individual stories of particular detainees may be illustrative, but they are unlikely to be determinative of the issue of liability. The predominant issues in the litigation, at least with regard to liability, will be the existence and constitutionality of the defendants' alleged policies. A class action is the most efficient device for this kind of case because the legality of the policies can be determined in one proceeding.

By contrast, determination of damages for the class members likely will have to be done individually, as the nature and extent of any harm are likely to vary from person to person. Rule 23, however, provides enough flexibility to deal with that while still

10

certifying a class. The Court may bifurcate liability and damages trials or appoint a magistrate judge to preside over individual damages proceedings. *Carnegie v. Household Intern., Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). As the Seventh Circuit stated earlier this month, "[a]lthough the extent of each class member's damages might vary, district judges can devise solutions to address that problem if there are substantial common issues that outweigh the single variable of damages amounts." *Arreola*, 2008 WL 4553059, at *11 (noting that the presence of individual damages issues did not preclude certification of a class where the claim alleged deliberate indifference to the medical needs of jail detainees). This is precisely such a case. The core issues, which predominate over all others, are the common issues the Court has previously identified.

**Conclusion**

For the foregoing reasons, the Court grants plaintiffs' motion for class certification [docket no. 21]. The Court certifies the following class under Rule 23(b)(3): all persons confined at the Cook County Jail on and after August 3, 2005 who provided notice that he or she had been taking prescription medication for a serious health need and who was not provided with appropriate medication within 24 hours thereafter. The case is set for a status hearing on November 13, 2008 at 9:30 a.m. Counsel are directed to confer regarding a proposed form of class notice and to submit a proposal or proposals to the Court by November 10, 2008.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: October 24, 2008