IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Michael Parish, et al., | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | No. 07 CV 4369 |
| -vs- | ) | |
| | ) | *(Judge Lee)* |
| Sheriff of Cook County and Cook County, | ) | |
| | ) | |
| | ) | |
| *Defendants* | ) | |

## PLAINTIFFS' MOTION FOR LEAVE TO FILE SUGGESTION OF INTERVENING AUTHORITY

In light of the recent decision of the Seventh Circuit in *Thomas v. State of Illinois*, ___ F.3d ___ (No. 12-2095, 7th Cir., September 27, 2012) (attached as Exhibit 1), plaintiffs, by counsel, move the Court for leave to file the following as a suggestion of intervening authority.

1. Defendants ask the Court to reject plaintiffs' legal theory that "delay in [providing prescription] medication poses a risk of harm." (Document 203 at 5.) Defendants assert that plaintiffs must show "actual harm" (Document 203 at 13), rather than harm to "some general statistical cohort." (Document 203 at 9.) Defendant Cook County advances the same legal theory in its motion for summary judgment, asserting that plaintiffs must show that discontinu-

ation of prescription medication caused "harm" (Document 194 at 5-12, 15-20) "beyond the progress of the disease itself." (Document 194 at 21.)

2. The intervening decision of the Seventh Circuit i*n Thomas v. State of Illinois*, ___ F.3d ___ (No. 12-2095, 7th Cir., September 27, 2012), rejects defendants' legal theory. There, the Court of Appeals wrote "to correct the judge's apparent assumption that creation of a mere hazard to health, as opposed to an actual impairment of health, can never be a harm sufficient to support an Eighth Amendment violation." *Thomas v. State of Illinois*, Exhibit 1 at 3. The Court of Appeals endorsed and explained "probabilistic harm," the theory on which plaintiffs rely in this case (Exhibit 1 at 5-6):

> [A] third [type of harm], and the only one alleged by this plaintiff, is hazard, or probabilistic harm — "loss of a chance," as it is called, which in *Doll v. Brown,* 75 F.3d 1200, 1205-06 (7th Cir. 1996), we "illustrated by cases in which, as a result of a physician's negligent failure to make a correct [6] diagnosis, his patient's cancer is not arrested, and he dies — but he probably would have died anyway. The trier of fact will estimate the probability that the patient would have survived but for the physician's negligence — say it is 25 percent — and will award that percentage of the damages the patient would have received had it been certain that he would have survived but for the negligence." (citations omitted)

3. The Court of Appeals in *Thomas* considered infestation of a prisoner's cell, and concluded that actual harm was unnecessary "even if the prisoner plaintiff had been lucky and escaped disease and had had sufficient psychological fortitude (or ignorance) to avoid suffering mental distress" (Exhibit 1 at 7.) This principle is directly applicable in this case, where plaintiffs have come forward with evidence about the dangers of arbitrarily discontinuing medication that had been prescribed for a serious medical or psychological condition.

It is therefore respectfully requested that the Court grant plaintiffs leave to file the foregoing as a suggestion of intervening authority.

Respectfully submitted,

/s/ Kenneth N. Flaxman
Kenneth N. Flaxman,
ARDC No. 830399
200 S Michigan Ave, Ste 1240
Chicago, Illinois 60604
(312) 427-3200

Thomas G. Morrissey.
10249 S Western Ave
Chicago, Illinois 60643
*Attorneys for Plaintiffs*

**Exhibit 1**

In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-2095

CALVIN THOMAS,

                                        *Plaintiff-Appellant*,

*v.*

STATE OF ILLINOIS and ILLINOIS
    DEPARTMENT OF CORRECTIONS,

                                        *Defendants-Appellees*.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:12-cv-00137-GPM   **G. Patrick Murphy**, *Judge*.

SUBMITTED AUGUST 28, 2012—DECIDED SEPTEMBER 27, 2012

Before POSNER, ROVNER, and WOOD, *Circuit Judges*.

POSNER, *Circuit Judge*. The plaintiff brought suit under 42 U.S.C. § 1983 complaining of having been subjected to cruel and unusual punishments while an inmate of an Illinois state prison. The defendants are the state and the state agency that operates the prisons. The suit alleged that the plaintiff's cell had been infested with mice and cockroaches and that a window pane was

2                                                                    No. 12-2095

missing and as a result rain came into his cell through the window, and that a warden or assistant warden had done a "walk through" and seen that the pane was missing yet nothing had been done to replace it.

The district judge dismissed the suit on alternative grounds: that the defendants were immune from suit by virtue of the Eleventh Amendment and that the plaintiff's complaint failed to allege any harm. The second ground is incorrect: the complaint alleges that allowing rain to enter the cell through the empty window frame created a health hazard.

The judge was correct, however, that the Eleventh Amendment bars the suit. The suit is against a state and a state agency and Congress did not abrogate the states' sovereign immunity from suit under section 1983, as it could have done. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66-70 (1989); *Quern v. Jordan*, 440 U.S. 332, 345 (1979) ("[section] 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on that question of state liability and which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States"); *Kroll v. Board of Trustees*, 934 F.2d 904, 909 and n. 5 (7th Cir. 1991); *Power v. Summers*, 226 F.3d 815, 818 (7th Cir. 2000); Richard H. Fallon, Jr. et al., *Hart & Wechsler's The Federal Courts and the Federal System* 1091 (5th ed. 2003). But the *Will* decision, *supra*, 491 U.S. at 70-71, held that a state and its agencies are not suable "persons" within the meaning

No. 12-2095 3

of section 1983 (see also *Lapides v. Board of Regents*, 535 U.S. 613, 617 (2002); *Carroll v. DeTella*, 255 F.3d 470, 471 (7th Cir. 2001)), thus providing a statutory as distinct from a constitutional defense to section 1983 suits against states and their agencies. And consistent with the principle of avoiding unnecessary constitutional decisionmaking, judges are to address the statutory defense before the constitutional, *Williams v. Wisconsin*, 336 F.3d 576, 580 (7th Cir. 2003); *Power v. Summers*, *supra*, 226 F.3d at 818; see *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 778-81 (2000), which the district judge failed to do.

The plaintiff could have avoided both the statutory and the constitutional bar by naming individuals as defendants rather than just a state and an agency of the state, but he failed to do that.

So the suit is barred, but we write to correct the judge's apparent assumption that creation of a mere hazard to health, as opposed to an actual impairment of health, can never be a harm sufficient to support an Eighth Amendment violation. This assumption is related to the fallacy that we exposed in our recent decision concerning alleged psychological harm from a pat down and strip search in which the defendant guard was charged with having fondled the plaintiff's testicles and penis gratuitously and offensively. *Washington v. Hively*, No. 12-1657, 2012 WL 3553419 (7th Cir. Aug. 20, 2012). The district court had granted summary judgment in favor of the guard on the basis of cases such as *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir.

2009), which state that "de minimis uses of force are non-actionable" in prisoner civil rights suits. The force used in the *Washington* case was indeed minimal and the only harm caused by it psychological, but the absence of significant force and of physical injury did not warrant judgment for the defendant. That is not a new principle. See also *Guitron v. Paul*, 675 F.3d 1044, 1046 (7th Cir. 2012); *Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009) (per curiam); *Calhoun v. DeTella*, 319 F.3d 936, 940 (7th Cir. 2003); *Farmer v. Perrill*, 288 F.3d 1254, 1260 (10th Cir. 2002); *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997); *Boddie v. Schnieder*, 105 F.3d 857, 860-61 (2d Cir. 1997); cf. *Stanojkova v. Holder*, 645 F.3d 943, 948 (7th Cir. 2011). But it seems not to be fully understood, so it is worth reiterating.

The judge said that "a successful complaint of pest infestation can be distinguished [from an unsuccessful one only] by an allegation of 'significant physical harm' arising from the pests." But as we emphasized in the *Washington* case, physical injury is not the only type of injury actionable in a prisoner's civil rights suit. It is true that because "no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury," 42 U.S.C. § 1997e(e), a prisoner cannot obtain compensatory damages without proving a physical injury. But "physical injury . . . is not a filing prerequisite for the federal civil action itself," *Calhoun v. DeTella, supra*, 319 F.3d at 940, because the prisoner can still obtain injunctive relief, nominal damages, and puni-

**Plaintiffs' Exhibit 1**                                                           **Page 4**

No. 12-2095 5

tive damages. *Id*. at 940-41; *Washington v. Hively*, *supra*, 2012 WL 3553419, at *2; *Smith v. Peters,* 631 F.3d 418, 421 (7th Cir. 2011).

Depending on how extensive the infestation of a prisoner's cell is, what the infesting pests are, what odors or bites or risk of disease they create, what particular psychological sensitivities the prisoner was known to have (recall Winston's unreasoning fear of rats in *Nineteen Eighty-Four*, a fear exploited by his torturers to break his spirit without actually touching him, *Lindale v. Tokheim Corp.,* 145 F.3d 953, 955 (7th Cir. 1998)), and how long the infestation continues, a trier of fact might reasonably conclude that the prisoner had been subjected to harm sufficient to support a claim of cruel and unusual punishment even if he had not contracted a disease or suffered any physical pain. Cf. *Powers v. Snyder*, 484 F.3d 929, 931 (7th Cir. 2007); *Hearns v. Terhune,* 413 F.3d 1036, 1042-43 (9th Cir. 2005); *Gaston v. Coughlin,* 249 F.3d 156, 165-66 (2d Cir. 2001); *Palmer v. Johnson,* 193 F.3d 346, 353 (5th Cir. 1999); *Clark v. Armontrout,* 28 F.3d 71, 71 (8th Cir. 1994) (per curiam); *Williams v. Griffin,* 952 F.2d 820, 822, 825 (4th Cir. 1991).

But we need to distinguish among three different types of harm that infestation of a prisoner's cell can create. One is disease. A second is psychological harm. And a third, and the only one alleged by this plaintiff, is hazard, or probabilistic harm—"loss of a chance," as it is called, which in *Doll v. Brown*, 75 F.3d 1200, 1205-06 (7th Cir. 1996), we "illustrated by cases in which, as a result of a physician's negligent failure to make a correct

6                                                        No. 12-2095

diagnosis, his patient's cancer is not arrested, and he dies—but he probably would have died anyway. The trier of fact will estimate the probability that the patient would have survived but for the physician's negligence—say it is 25 percent—and will award that percentage of the damages the patient would have received had it been certain that he would have survived but for the negligence." See also *Bishop v. Gainer,* 272 F.3d 1009, 1016-17 (7th Cir. 2001); *Smith v. Bubak,* 643 F.3d 1137, 1141 (8th Cir. 2011); *Jorgenson v. Vener,* 616 N.W.2d 366, 370-71 (S.D. 2000); *Alexander v. Scheid,* 726 N.E.2d 272, 275-82 (Ind. 2000); *Wollen v. DePaul Health Center,* 828 S.W.2d 681, 683-85 (Mo. 1992); W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 41, p. 272 (5th ed. 1984).

   The potential psychological harm from living in a small cell infested with mice and cockroaches is pretty obvious. Regarding physical harm from involuntary cohabitation with these vermin, we note that cockroaches can transmit bacteria that aggravate asthma and cause other disease, Chartered Institute of Environmental Health, "Urban Pests and Their Public Health Significance" 28-31, July 2008, www.cieh.org/uploadedFiles/Core/Policy/Environmental_protection/Pest_management/Existing_and_emerging_threat/Urban_pests_health_significance_July_08.pdf (all websites cited in this opinion were visited on September 15, 2012); C. Rivault et al., "Bacterial Load of Cockroaches in Relation to Urban Environment," 110 *Epidemiology & Infection* 317 (1993), www.ncbi.nlm.nih.gov/pmc/articles/PMC2272268/pdf/epidinfect00038-0131.pdf, and that inhaling microscopic particles of saliva, droppings, or urine from mice infected with hantavirus can

No. 12-2095 7

infect a person with potentially fatal Hantavirus Pulmonary Syndrome (sometimes called HPS); rodent contact can cause other fatal diseases as well (famously, but not currently, Bubonic Plague). See *Haceesa v. United States*, 309 F.3d 722, 723-24 (10th Cir. 2002); Centers for Disease Control and Prevention, "Diseases from Rodents," July 29, 2010, www.cdc.gov/rodents/diseases/index.html, and "Facts About Hantaviruses: What You Need To Know To Prevent the Disease Hantavirus Pulmonary Syndrome (HPS)," www.vdh.virginia.gov/epidemiology/DEE/otherzoonosis/documents/Hantavirus/HPS_Brochure.pdf; Illinois Dep't of Public Health, "Hantaviruses" www.idph.state.il.us/public/hb/hbhanta.htm; New York State Dep't of Health, "Hantavirus Pulmonary Syndrome (HPS)," Oct. 2011, www.health.ny.gov/diseases/communicable/hantavirus/fact_sheet.htm; Chartered Institute of Environmental Health, *supra*, at 23, 26-27. HPS and Plague show that rodents can kill you without biting you (so much for the notion, which we tried to scotch in *Washington v. Hively*, *supra*, that all cruel and unusual punishments in a prison setting must involve the exertion of force against the body). Assuming the applicability of the "loss of a chance" theory of damages, heavy, protracted infestation of a prisoner's cell with such pests might be found to be a compensable hazard even if the prisoner plaintiff had been lucky and escaped disease and had had sufficient psychological fortitude (or ignorance) to avoid suffering mental distress whether from knowledge that he might become seriously ill as a consequence of the conditions in his cell or from sheer disgust.

Plaintiffs' Exhibit 1                                                                                                          Page 7

8                                                            No. 12-2095

    But although important to emphasize because of their pertinence to future cases, these points cannot keep the plaintiff's suit alive, because of the barriers that we noted earlier.

                                                                                                                      AFFIRMED.

---

9 27 12

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of October, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Francis Catania, Ass't State's Atty, 302 Daley Center, Chicago, IL 60602, and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants: none.

/s/ Kenneth N. Flaxman
_____
Kenneth N. Flaxman
ARDC Number 08830399
200 S Michigan Ave, Ste 1240
Chicago, IL 60604-2430
(312) 427-3200 (phone)
(312) 427-3930 (fax)
knf@kenlaw.com (email)