IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL PARISH, CURTIS L. OATS, | ) | |
| LEILA KHOURY, SEAN DRISCOLL, | ) | |
| CARLA LOFTON, ROY CLEAVES, | ) | |
| LISA BROWN, DAN TAYLOR, | ) | |
| DEAN MILLER, KEVIN SANDERS, | ) | |
| STACEY CLARK and CARLOTTE | ) | |
| WILSON, on behalf of themselves and | ) | |
| all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 07 C 4369 |
| | ) | |
| SHERIFF OF COOK COUNTY and | ) | Judge John Z. Lee |
| COOK COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

In this class action brought pursuant to 42 U.S.C. § 1983, Plaintiffs have sued the Sheriff

of Cook County and Cook County alleging that Cook County Jail (CCJ) has policies and

practices of deliberate indifference to their serious medical needs in violation of their due process

rights under the Fourteenth Amendment. Judge Matthew F. Kennelly certified, under Fed. R.

Civ. P. 23(b)(3), a class of "all persons confined at the Cook County Jail on and after August 3,

2005 who provided notice that he or she had been taking prescription medication for a serious

health need and who was not provided with appropriate medication within 24 hours thereafter."

*Parish v. Sheriff of Cook Cty.*, No. 07 C 4369, 2008 WL 4812875, at *6 (N.D. Ill. Oct. 24, 2008).

The parties then conducted discovery, and fact and expert discovery has concluded. Defendants

have moved to decertify the class. After holding several hearings on the motion and receiving

supplemental briefing, the Court denies the motion to decertify the class.

## Facts

The facts as alleged in the Second Amended Complaint were set forth in Judge Kennelly's Memorandum Opinion and Order granting the motion for class certification, and the Court need not repeat them in detail here. In August 2007, Plaintiffs filed suit, alleging that Defendants implemented various categorical policies that denied or delayed the dispensing of necessary prescription medication to detainees at CCJ. 2d Am. Compl., ¶¶ A.c., B.c. Such policies, according to Plaintiffs, constitute deliberate indifference to their serious medical needs in violation of their Fourteenth Amendment rights.

Judge Kennelly certified the following class under Rule 23(b)(3): "all persons confined at the Cook County Jail on and after August 3, 2005 who provided notice that he or she had been taking prescription medication for a serious health need and who was not provided with appropriate medication within 24 hours thereafter." *Parish*, 2008 WL 4812875, at *6. In doing so, he stated that Plaintiffs based their theory of liability on Defendants' alleged policy of allowing unqualified personnel to usurp decisions made by medical doctors and other categorical policies. *Id.* at *3. Defendants did not seek appellate review under Federal Rule of Civil Procedure 26(f).

The case was then reassigned to Judge Gary Feinerman upon appointment to the bench. The parties conducted and completed fact and expert discovery. The case has since been reassigned to this Court's docket.

Defendants subsequently moved to decertify the class arguing that Judge Kennelly erred in certifying the class and that certain facts revealed during discovery require decertification. Because the Court had several questions regarding the nature and scope of Plaintiffs' claims, the Court held a number of hearings and ordered supplemental briefing on the motion to decertify.

This enabled the parties to clarify their positions in their statements to the Court and written submissions.

## Discussion

Pursuant to Rule 23(c)(1)(C), "[a]n order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). "Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). However, "[i]n the absence of materially changed or clarified circumstances, or the occurrence of a condition on which the initial class ruling was expressly contingent, courts should not condone a series of rearguments on the class issues by . . . the opponent of the class . . . ." 3 W. Rubenstein, A. Conte & H. Newberg, Newberg on Class Actions § 7:47 (4th ed. 2011).[1]

In addition, the scope of review of Judge Kennelly's ruling is further limited because "law-of-the-case principles are applicable when a case is transferred to a new judge midway through litigation; in general, the successor judge is discouraged from reconsidering the decisions of the transferor judge." *Gilbert v. Ill. State Bd. of Educ.*, 591 F.3d 896, 902 (7th Cir. 2010); *see Brengettcy v. Horton*, 423 F.3d 674, 680 (7th Cir. 2005). "The successor judge should depart from the transferor judge's decision only 'if he has a conviction at once strong and reasonable that the earlier ruling was wrong, and if rescinding it would not cause undue harm to the party that had benefitted from it.'" *Gilbert*, 591 F.3d at 902 (quoting *HK Sys., Inc. v. Eaton Corp.*, 553 F.3d 1086, 1089 (7th Cir. 2009)).

---

[1] Defendants rely on *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007), as persuasive authority for the proposition that, on a motion to decertify, the Court must stringently examine whether Plaintiffs have established they are similarly situated. *See* Defs.' Reply Supp. Mot. Decertify Class 2. Unlike the facts of this case, however, the *Anderson* court discussed the similarly situated requirement in the context of denying a motion to decertify at the second stage of an FLSA class action alleging class-wide age discrimination. Thus, the Court does not find *Anderson* applicable here.

With these principles in mind, the Court concludes that there are no materially changed or clarified circumstances or changes in the law requiring decertification. Furthermore, the Court does not have a strong and reasonable conviction that Judge Kennelly's ruling was incorrect. Accordingly, the Court denies the motion to decertify.

## I. Asserted Policies

After Defendants moved to decertify the class, the Court asked Plaintiffs to clarify the various categorical policies upon which they base their deliberate indifference claim. Plaintiffs assert that CCJ had several unconstitutional policies. Pls.' Mem. Resp. Defs.' Suppl. Br. Supp. Mot. Decertify at 6–7; ECF No. 308. These categorical policies were alleged in Plaintiffs' Second Amended Complaint:

### A. Policy 1 ("Psychotropic Medication Screening Policy")

Plaintiffs assert that, after a cursory review, an unqualified intake screener, without consulting a physician, would discontinue psychotropic medication after a detainee provided notice that it had been prescribed by the detainee's psychologist or psychiatrist. 2d Am. Compl. ¶¶ 4.A.b, 4.A.c, 4.A.d. For example, Parish alleges that, although he arrived at the jail with the medication in 2005, the intake screener exercised his or her discretion and concluded that Parish should no longer receive the psychotropic medication. *Id.* ¶¶ 8–9. Only after Parish attempted suicide did CCJ provide him with the psychotropic medication. *Id.* ¶ 11. When Parish returned to the CCJ in 2007, he notified the intake screener that he had been prescribed psychotropic medication, but he did not receive the medication until after he attempted suicide again. *Id.* ¶¶ 12–16.

### B. Policy 2 ("Anti-Depressant Swap Screening Policy")

According to Plaintiffs, in those instances when CCJ screeners did not discontinue treatment of the detainee's mental health issues altogether, they regularly would replace previously prescribed psychotropic medications with less-costly anti-depressants that were ineffective in treating detainees' psychoses. *Id.* ¶ 4.A.f; *see Parish*, 2008 WL 4812875, at *1. Under this theory, Plaintiffs assert that, even if intake screeners determined that some treatment for mental disorders is necessary, the screeners then would have no choice but to swap the medications for cheaper alternatives.

Plaintiffs further assert that the Anti-Depressant Swap Policy is not limited to intake screeners, but also applied to physicians, who treat detainees at CCJ throughout their stay. But the only paragraph in the Second Amended Complaint that even arguably could be construed to allege that this policy extended beyond the intake process is Paragraph A.f. When viewed in context, however, it is apparent that this claim too is limited to the intake process. Indeed, all of Plaintiffs' allegations regarding the other policies, including a similar allegation made with respect to non-psychotropic medications, are limited to the intake process. And the entire focus of the Second Amended Complaint, when read as a whole, is on the intake process. *See, e.g.,* 2d Am. Compl. ¶¶ 4.A.a; 4.B.a, b, f, h, i.; *see also id.* ¶ 5 (stating that "plaintiffs bring this action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure for all persons confined at the Cook County Jail on and after August 3, 2005, who provided notice that he or she had been taking prescription medication for a serious health need <u>and</u> who was not provided with appropriate medication within 24 hours thereafter").

These are the allegations that framed Judge Kennelly's certification of a class consisting of "all persons confined at the Cook County Jail on and after August 3, 2005 who provided

notice that he or she had been taking prescription medication for a serious health need and who was not provided with appropriate medication within 24 hours thereafter." *Parish*, 2008 WL 4812875, at *6. As such, his certification of the class clearly was based on the policies allegedly employed at CCJ during the intake process, rather than policies that may have applied to the rest of a detainee's stay. That said, to the extent that Plaintiffs contend that physicians also were involved in implementing these intake policies, such conduct would fall within the allegations of the Second Amended Complaint and Judge Kennelly's certification order. Accordingly, the Court views the Anti-Depressant Swap Screening Policy as applying to screeners and physicians involved in the initial intake process.

### C. Policy 3 ("Nonpsychotropic Medication Screening Policy")

Plaintiff also allege that an unqualified intake screener, without consulting a physician, would discontinue nonpsychotropic medication after a detainee provided notice that it had been prescribed by the detainee's physician. *Id.* ¶¶ 4.B.b–4.B.i. Examples of these medications included those prescribed to treat the detainee's asthma, diabetes, congestive heart failure, infection, pain, enlarged prostate, acid reflux, and hepatitis C. *Id.* ¶¶ 53, 63, 69, 73, 79.[2]

### D. Policy 4 ("Post-Screener-Denial Policy")

According to Plaintiffs, after an intake screener discontinued prescribed nonpsychotropic medication, CCJ would not provide a speedy procedure that allowed a detainee to see a physician in order to override the intake screener's determination. *Id.* ¶ 4.B.g.

---

[2]      Although Plaintiffs had asserted in open court that they based their deliberate indifference claim on CCJ's methadone tapering policy, they have since conceded that they are only asserting that methadone is one of the medications under the Nonpsychotropic Screen Policy that was not provided within 24 hours after the detainee notified the intake screener that the detainee had been prescribed a particular dosage of methadone. Pls.' Mem. Resp. Defs.' Suppl. Br. Supp. Mot. Decertify at 12–13.

### E.  Policy 5 ("Hospital-to-CCJ Transfer Policy")

Plaintiffs also assert that CCJ had a policy of discontinuing prescribed nonpsychotropic medication even when a detainee was transferred from a hospital to CCJ with prescribed medications relating to the conditions for which the detainee was hospitalized.  2d Am. Compl. ¶ 4.B.e.  This policy is based on the presumption that detainees who arrive at CCJ in this manner were required to go through a different intake process than all other detainees such that this policy was not redundant of the Nonpsychotropic Screening Policy.  Furthermore, the class description includes class members who could assert a deliberate indifference claim based on the Hospital-to-CCJ Transfer Policy.

### F.  Policy 6 ("No Privacy Policy")

Lastly, Plaintiffs allege that CCJ conducted intake evaluations in overcrowded areas with little privacy.  *Id.* ¶ 4.B.a; *see* Pls.' Reply Mem. Supp. Mot. Class Cert. at 3–4, ECF No. 40 (arguing that a detainees are disinclined to divulge information about being HIV-positive in such an environment).  Because Judge Kennelly certified the class as including only those detainees who provided notice that he or she had been taking prescription medication for a serious health need, however, detainees who did not tell the intake screener that they had been prescribed a particular medication for a serious health need are not members of the class.  Moreover, Plaintiffs have not asserted that Judge Kennelly erred in adopting the class definition that they themselves proposed.  Accordingly, because no one that fits within the class definition could assert the No Privacy Policy, it cannot form the basis for the class's deliberate indifference claim.

The Court therefore views Judge Kennelly's class certification ruling as recognizing five policies as they are alleged by Plaintiffs:  (1) the Psychotropic Medication Screening Policy; (2)

the Anti-Depressant Swap Screening Policy; (3) the Nonpsychotropic Medication Screening Policy; (4) the Post-Screener-Denial Policy; and (5) the Hospital-to-CCJ Transfer Policy. Plaintiffs assert that, although there have been some improvements, these policies have continued to exist throughout the entire class period, *i.e.*, from August 3, 2005, to present. *See* Pls.' Mem. Resp. Defs.' Suppl. Br. Supp. Mot. Decertify at 15–19. And Defendants simply have not conclusively established that any changes made to CCJ's intake screening over the years have mooted the five categorical intake policies on which Plaintiffs' deliberate indifference claim is based. *See* Defs.' Mem. Supp. Mot. Decertify at 1–25; Defs.' Suppl. Mem. Supp. Defs.' Mot. Decertify at 9–12.[3] With these policies in mind, the Court proceeds to the Rule 23 analysis.

## II. Class Prerequisite

As an implicit prerequisite to class certification, courts require "ascertainability," or, in other words, "that classes be defined clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). Three typical problems arise as to ascertainability: (1) the class definition is so vague, amorphous, or imprecise that a court cannot determine who should receive notice; (2) the class definition is based on subjective criteria such as a person's state of mind; and (3) the class is defined in terms of success on the merits so that a class member either wins or by losing, falls out of the class and is not bound by the judgment (a "fail-safe class"). *Id.* at 659–660.

Here, Defendants argue that the class definition presents an impermissible "fail-safe class." *See* Defs.' Mem. Supp. Mot. Decertify at 22–23. Again, a fail-safe class is "a class which would be bound only by a judgment favorable to plaintiffs but not by an adverse judgment." *Adashunas v. Negley*, 626 F.2d 600, 604 (7th Cir. 1980). In other words, a fail-safe

---

[3]     Of course, whether Plaintiffs have raised a genuine issue as to a material fact regarding whether the five policies existed throughout the class period and whether the policies have violated their constitutional rights will be assessed on summary judgment.

class is "defined in a way that precludes membership unless the liability of the defendant is established. When the class is so defined, once it is determined that a person, who is a possible class member, cannot prevail against the defendant, that member drops out of the class." *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010) (stating that a fail-safe class "is palpably unfair to the defendant, and is also unmanageable—for example, to whom should the class notice be sent?").

The Court notes that, prior to their motion to decertify the class, Defendants did not object to the class definition and failed to even mention this issue anywhere in their brief in opposition to class certification. *See* Defs.' Resp. Pls.' Mot. Class Certification at 1–15; Defs.' Mem. Supp. Mot. Decertify Class at 22–23. The class definition has not changed since Plaintiffs first proposed it in their motion to certify the class years ago. *See* Pls.' Mot. Certify Class Action at 1. Defendants did not seek appellate review of Judge Kennelly's class certification under Federal Rule of Civil Procedure 26(f). Judge Kennelly adopted Defendants' proposal with regard to how class members should be notified and Plaintiffs have provided notice of the pendency of the case to 105,168 potential class members. Because Defendants have not met their burden in establishing that it is proper to revisit the issue at this late date, the Court denies the motion to decertify on this basis.

In any event, Defendants' argument is unpersuasive. The class definition in this case is not a circular one that determines the scope of the class only after liability attaches. Defendants rely on *Adashunas*, 626 F.2d at 603, but that case is distinguishable. There, plaintiffs proposed a class consisting of "children entitled to a public education who have learning disabilities and who are not properly identified and/or who are not receiving a special education." *Id.* The court held that such a definition constituted a fail-safe class because only those class members who

proved they had a learning disability would be bound by any judgment, while those who were unable to prove they had a learning disability would be free to sue defendants anew because they were not members of the class. *Id.* at 604.

In contrast to the class definition in *Adashunas*, here if it is determined that Defendants did not maintain any of the asserted categorical policies or that a certain policy did not create a substantial risk of harm to detainees, such a judgment would bind all persons confined on or after August 3, 2005, who had provided notice that he or she had been taking prescription medication for a serious health need and who had not been provided with appropriate medication within 24 hours thereafter. Membership in the class is not dispositive of liability. Furthermore, because any prescription medication notification is indicated on intake or transfer records, the parties are able to determine who is a member of the class. Thus, even if the Court were to reach the merits of whether the class definition creates a fail-safe class, the Court would deny the motion to decertify on this ground.

Defendants' argument regarding the threshold prerequisites that must be considered prior to engaging in a Rule 23 analysis does not leave the Court with a strong and reasonable conviction that class certification was improvidently granted. The Court therefore proceeds to the Rule 23 analysis.

## III. Rule 23(a) Requirements

"A plaintiff who moves for class certification must satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a), as well as at least one subsection of Rule 23(b)." *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 716 (7th Cir. 2012); *see Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, ___ U.S. ____, 133 S. Ct. 1184, 1191 (2013). Defendants argue that Judge Kennelly erred in holding that Plaintiffs had satisfied Rule

23(a)'s requirements of numerosity, commonality, and typicality. Defendants also contend that a change in the law and newly uncovered facts undermine the finding that these requirements have been met.

### A. Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). A class with as few as forty members has been held to satisfy the numerosity requirement. *See Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969); *see also Pruitt v. City of Chi.*, 472 F.3d 925, 926–27 (7th Cir. 2006) ("Sometimes even 40 plaintiffs would be unmanageable.").

Judge Kennelly held that Plaintiffs satisfied numerosity after reviewing 180 affidavits executed by putative class members in *Duran v. Sheehan*, No. 74 C 2949. Defendants argue that the affidavits were unsworn and thus do not constitute evidence of numerosity. Defs.' Reply Br. Supp. Mot. Decertify at 3–4. An affidavit is properly sworn under oath if it declares under penalty of perjury that the statements contained in an affidavit are true. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). Because each of the 180 affidavits contains such a declaration, Judge Kennelly properly considered them. *Parish*, 2008 WL 4812875, at *3; *see* Defs.' Reply Supp. Mot. Decertify, Ex. A, Sworn Declarations. Furthermore, in each affidavit the detainee states that the intake personnel was told that he or she was taking prescription medication to treat a particular condition and that the detainee never received the medication. *See, e.g.*, Defs.' Reply Supp. Mot. Decertify, Ex. A, Sworn Declarations. Accordingly, the Court denies Defendants' motion to decertify on this ground.

### B. Commonality

Next, Defendants argue Judge Kennelly erred in holding that there are questions of law or fact common to the class because, at the time of his ruling, he did not have the guidance of *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). *See* Defs.' Reply Supp. Mot. Decertify Class at 2. The Court disagrees.

Commonality requires "questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), although "even a single common question will do," *Wal-Mart*, 131 S. Ct. at 2556 (alterations and quotation marks omitted). "[T]he Supreme Court explained in *Wal-Mart* that superficial common questions—like . . . whether each class member 'suffered a violation of the same provision of law'—are not enough." *Jamie S.*, 668 F.3d at 497 (quoting *Wal-Mart*, 131 S. Ct. at 2551). Rather, putative class plaintiffs' "claims must depend upon a common contention . . . [t]hat . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551.

Thus, "the raising of common 'questions'—even in droves," is not enough; the key to commonality is whether a classwide proceeding can "generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* (quotation marks omitted). Because this has always been a part of the Rule 23 inquiry, numerous courts have held that *Wal-Mart* did not change the law regarding class certification. *See N.B. ex rel. Buchanan v. Hamos*, No. 11 C 6866, 2012 WL 1953146, at *9 (N.D. Ill. May 30, 2012) (Pallmeyer, J.) (stating that *Wal-Mart* does not change the analysis of class certification issues and "the Seventh Circuit has recognized . . . the holding in [*Wal-Mart*] does not apply where [injury] results from a defendant's

standardized conduct toward proposed class members, such as generalized policies that affect all class members in the same way"); *Corey H. v. Bd. of Educ. of City of Chi.*, No. 92 C 3409, 2012 WL 2953217, at *5 (N.D. Ill. July 19, 2012) (Gettleman, J.) ("[I]t hardly needs stating that neither [*Wal-Mart*] nor *Jamie S.* 'changed' the law on class certification."); *see also McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 487–90 (7th Cir. 2012) (allowing, post-*Wal-Mart*, class certification for a disparate impact claim challenging company-wide policies allowing brokers to form their own teams and distributing accounts based on broker performance).

Because *Wal-Mart* does not represent a change in the law, that case, in and of itself, does not provide a basis for revisiting Judge Kennelly's ruling as to commonality. Moreover, Judge Kennelly's ruling was correct. Judge Kennelly held that a class-wide proceeding would generate a common answer as to whether Defendants had policies of allowing intake screeners to discontinue a detainee's prescription medication or to swap out previously prescribed medication with an ineffective substitute without consulting a physician. This common answer will resolve an issue that is central to the validity of each one of the claims of over 100,000 putative class members in one fell swoop. Accordingly, the Court is not left with a strong conviction that Judge Kennelly erred in holding that Plaintiffs satisfied the commonality requirement.

The Court notes that, in support of their motion to decertify the class, Defendants primarily argue that discovery has revealed that Plaintiffs are unable to prove that the categorical policies on which they base their deliberate indifference claim existed or, if they existed, that the policies violated Plaintiffs' constitutional rights. Defs.' Mem. Supp. Mot. Decertify at 8–11; Defs.' Suppl. Mem. Supp. Mot. Decertify at 2–3. But such questions go to the heart of the merits of Plaintiffs' claim and are more appropriately left for summary judgment. *See Tyson Foods,*

*Inc. v. Bouaphakeo*, ___ S. Ct. ____, No. 14-1146, 2016 WL 1092414, at * 9 (Mar. 22, 2016) ("[T]he concern about the proposed class is not that it exhibits some fatal dissimilarity but, rather, a fatal similarity—[an alleged] failure of proof as to an element of the plaintiffs' cause of action—courts should engage that question as a matter of summary judgment, not class certification."); *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 677 (7th Cir. 2001) ("A court may not say something like 'let's resolve the merits first and worry about the class later' . . . or 'I'm not going to certify a class unless I think that the plaintiffs will prevail.'"). The Court therefore denies Defendants' motion to decertify on these grounds.

### C. Typicality

"The question of typicality in Rule 23(a)(3) is closely related to the preceding question of commonality." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokeley–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). Although "[t]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members," the requirement "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Id.*

In support of their motion for class certification, Plaintiffs provided over a hundred putative class members' sworn affidavits stating that intake screeners were notified that the detainee's physician had prescribed medication to treat a medical condition, but the detainee never received the prescription or received it days, weeks, or even months later. *See* 2d Am. Compl. ¶¶ 7–83; Pls.' Mem. Supp. Mot. Certify Class, Ex. 1, Affidavits. Plaintiffs aver that they

all were impacted by Defendants' categorical intake policies of allowing untrained intake screeners to usurp decisions made by medical doctors. Furthermore some detainees provide sworn affidavits recounting how CCJ refused to provide prescribed psychotropic medications only to replace them with ineffective, less costly anti-depressants. Because each class member's claim arises from the same policies of Defendants, the named Plaintiffs' claims satisfy the typicality requirement.

In response, Defendants assert that Plaintiffs "have no common experiences save incarceration and this lawsuit." *See* Defs.' Reply Supp. Mot. Decertify Class at 6. Defendants point to inconsistencies between the named Plaintiffs' allegations regarding the denial of psychotropic medication and Dr. Lynn Sanders' seventy-one page summary of Plaintiffs' medical records in order to show that no such policy exists or that class members were not harmed. *See* Defs.' Mem. Supp. Mot. Decertify Class at 14–18, 23–25. Defendants also argue that discovery has revealed that certain of the putative class members have not suffered a substantial risk of harm, such that the named plaintiffs' claims are not typical of the class. *See* Defs.' Mem. Supp. Mot. Decertify Class at 23–25. But, again, such arguments strike at the merits of Plaintiffs' case and are more properly addressed on summary judgment. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 823 (7th Cir. 2012) ("All of this is at best an argument that some class members' claims will fail on the merits if and when damages are decided, a fact generally irrelevant to the district court's decision on class certification."); *see also Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009) ("[A] class will often include persons who have not been injured by the defendant's conduct; indeed this is almost inevitable because at the outset of the case many of the members of the class may be unknown, or if they are known still the facts bearing on their claims may be unknown. Such a possibility or

indeed inevitability does not preclude class certification . . . .").  In sum, Defendants have failed to establish that typicality is an issue that should be revisited at this time or that Plaintiffs have not satisfied the requirement.

### D.  Adequacy of Named Class Members' Representation

"The final subdivision of Rule 23 requires that the representative parties fairly and adequately represent the class." *Rosario*, 963 F.2d at 1018.  "A class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Id.*  Further, the named representative must have a "sufficient interest in the outcome to assure that she will adequately and fairly represent the class." *Movement for Opportunity & Equality v. Gen. Motors Corp.*, 622 F.2d 1235, 1253 (7th Cir. 1980).

Defendants do not claim that the named Plaintiffs have antagonistic or conflicting claims.  Instead, they argue that the ultimate treatment received by each Plaintiff differed.  Although the length of delay in providing medication may affect damages, it does not render the named Plaintiffs inadequate representatives of the class claims.  Each class member's claim is based on Defendants' purported policy of permitting unqualified persons to discontinue medication previously prescribed by a detainee's physician upon Plaintiffs' arrival at CCJ, or the policy of swapping out psychotropic medication with cheaper, ineffective anti-depressants upon intake at CCJ.  Whether Plaintiffs will be able to create a triable issue as to the existence of such policies is an issue for summary judgment or trial, and whether each Plaintiff will ultimately be able to prove damages resulting from the policies can be addressed at a subsequent stage of this litigation.

## IV. Rule 23(b)(3) Requirements

"To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must 'predominate over any questions affecting only individual members'; and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (quoting Fed. R. Civ. P. 23(b)(3)). "The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

"Rule 23(b)(3)'s predominance requirement is satisfied when common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication." *Messner*, 669 F.3d at 815 (quotation omitted). In other words, "common questions can predominate if a common nucleus of operative facts and issues underlies the claims brought by the proposed class." *Id.* (quotation marks omitted). Rule 23(b)(3) merely requires that individual questions "not predominate over the common questions affecting the class as a whole." *Id.* "Considering whether questions of law or fact common to class members predominate begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011).

"The Eighth Amendment's ban on cruel and unusual punishment includes a proscription against deliberately indifferent treatment towards prisoners." *Rosario v. Brawn*, 670 F.3d 816, 820 (7th Cir. 2012). "Although the Eighth Amendment applies only to convicted persons,

pretrial detainees . . . are entitled to the same basic protections under the Fourteenth Amendment's due process clause." *Minix v. Canarecci*, 597 F.3d 824, 831 (7th Cir. 2010). Therefore, courts "apply the same legal standards to deliberate indifference claims brought under either the Eighth or Fourteenth Amendment." *Id.*

To state such a claim, a plaintiff must show that "(1) he had a serious medical need, and (2) the defendants were deliberately indifferent to it." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). As for the first element, "[a]n objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quotation marks omitted). With regard to the second element, "[i]t is enough to show that the defendants actually knew of a substantial risk of harm to the inmate and acted or failed to act in disregard of that risk." *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002).

Defendants argue that because the deliberate indifference standard requires a fact-intensive inquiry, individual issues will predominate over any issues common to the class and a class action is not superior to individual lawsuits. *See* Defs.' Mem. Supp. Mot. Decertify Class at 8–10, 20–21. Specifically, Defendants contend that Plaintiffs' claims will require individual inquiries regarding whether any delay in obtaining prescribed medication proximately caused the detainee's injury.

When Judge Kennelly granted the motion to certify the class, he was keenly aware that "individual stories of particular detainees may be illustrative." *Parish*, 2008 WL 4812875, at *5. He held, however, that "[t]he predominant issues in the litigation, at least with regard to liability, will be the existence and constitutionality of the defendants' alleged policies." *Id.* Consistent with Judge Kennelly's ruling, the Seventh Circuit has since stated that "the need for individual

proof [of proximate causation] alone does not necessarily preclude class certification" and a "district court has the discretion to . . . certify[] a class for liability alone where damages or causation may require individualized assessments." *Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010).

Numerous district courts throughout this circuit have certified class actions in which detainees have challenged a specific jail policy that applied equally to all class members on the theory that the policy constituted deliberate indifference in violation of the Fourteenth Amendment. *See, e.g., Smentek v. Sheriff of Cook Cty.*, No. 09 C 529, 2010 WL 4791509, at *8 (N.D. Ill. Nov. 18, 2010) (CCJ policy of denial of adequate dental care to detainees as violation of Fourteenth Amendment), *aff'd*, *Smentek v. Dart*, 683 F.3d 373, 377 (7th Cir. 2012); *see also Flood v. Dominguez*, 270 F.R.D. 413, 422 (N.D. Ind. 2010) (policy of depriving detainees of bedding, heat, personal hygiene items, exercise, and adequate meal portions as violation of Fourteenth Amendment); *Young v. Cty. of Cook*, No. 06 C 552, 2007 WL 1238920, at *9 (N.D. Ill. Apr. 25, 2007) (CCJ policy of subjecting detainees to strip search and cavity search as violation of Fourth and Fourteenth Amendments); *Jackson v. Sheriff of Cook Cty.*, No. 06 C 493, 2006 WL 3718041, at *7 (N.D. Ill. Dec. 14, 2006) (CCJ policy of urethral swabbing of detainees for sexually transmitted diseases without consent as violation of Fourth and Fourteenth Amendments); *cf. Arreola v. Godinez*, 546 F.3d 788, 800 (7th Cir. 2008) (remanding denial of Rule 23(b)(3) class certification for detainees challenging policy of denying crutches where CCJ argued that each prisoner's case would be different and noting, "even if each damages calculation will be fact-bound to some degree, many of the issues involved in this case . . . would be common among all potential class members"); *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911–12 (7th Cir. 2003) (affirming Rule 23(b)(3) class certification in mass environmental

tort case in which the district court "reserved for individual hearings if and when Met-Coil is determined to have contaminated the soil and water under the class members' homes in violation of federal or state law"). Defendants have not pointed to any development in the litigation or change in the law that would require the Court to revisit Judge Kennelly's ruling in this regard.

Moreover, even if the Court were to revisit Judge Kennelly's ruling, it is not left with the strong conviction that predominance and superiority have not been satisfied in this case. As for predominance, Plaintiffs challenge the purported policies of (1) allowing unqualified persons, upon a detainee's initial appearance at CCJ, to override the decisions of medical doctors by denying doctor-prescribed psychotropic and/or nonpsychotropic medication and (2) mandating that intake screeners swap previously prescribed psychotropic medications with ineffective anti-depressants. These policies affect every class member regardless of how he or she enters CCJ. As noted by Judge Kennelly, whether CCJ's policy exists and is constitutional will be the primary focus of this litigation. As Judge Kennelly recognized, the necessity of follow-up proceedings to determine claimant-specific issues with regard to causation and damages does not preclude certification in this case.

Defendants argue that common issues do not predominate because Plaintiffs must prove causation of injury as to each individual class member at the liability stage. But this is not the case. Rather, to establish liability, Plaintiffs must prove that (1) Defendants knew that failing to provide detainees with their prescribed medications within 24 hours of intake created a substantial risk of harm[4] and (2) Defendants disregarded that risk by implementing the five policies in question.

---

[4]    Plaintiffs point to eleven medications and contend that there is a substantial risk of injury if the provision of each of these medications is delayed by 24 hours. Plaintiffs, however, have not yet moved to create subclasses of detainees with regard to these medications for trial purposes.

As for superiority, Defendants assert that, because an individualized follow-up assessment of causation and damages is required, litigating Plaintiffs' deliberate indifference claims as a class is not superior to litigating them individually. Once again, Defendants have not alerted the Court to any development in the litigation or a change in the law that would warrant revisiting Judge Kennelly's determination as to this issue.

In any event, the Court does not have a strong conviction that Judge Kennelly was wrong when he determined that litigating this case as a class action would be superior to litigating each Plaintiff's claim individually. Judicial economy is best served by a single class action challenging the constitutionality of CCJ's purported policies rather than a multiplicity of individual lawsuits premised upon essentially the same issues. Because many of the potential class members would not recover enough in damages to justify bringing their own claim, for them, a class action represents the only viable method for vindicating any constitutional violation that may have occurred. Nor have potential class members shown an interest in pursuing such actions individually, and Defendants have not informed the Court of any litigation brought by individual class members indicating such interest. The fact that there will be follow-up proceedings with regard to claimant-specific issues does not necessarily mean that a class action is not the superior method for determining the existence and legality of the alleged policies in one proceeding. *See Mejdrech*, 319 F.3d at 911 ("If there are genuinely common issues, issues identical across all the claimants, issues moreover the accuracy of the resolution of which is unlikely to be enhanced by repeated proceedings, then it makes good sense, especially when the class is large, to resolve those issues in one fell swoop while leaving the remaining, claimant-specific issues to individual follow-on proceedings."); *see also Arreola*, 546 F.3d at 801 ("Although the extent of each class member's personal damages might vary, district judges can

devise solutions to address that problem if there are substantial common issues that outweigh the single variable of damages amounts."). Thus, the Court concludes that a class action is the superior method for litigating Plaintiffs' claims.

## Conclusion

For the reasons set forth herein, the Court denies Defendants' motion and supplemental motion to decertify the class action [177, 300].

**SO ORDERED**                                    **ENTER: 3/31/16**

_____
**JOHN Z. LEE**
**U.S. District Judge**