IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Michael Parish, et al., | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| -vs- | ) | No. 07-cv-4369 |
| | ) | |
| Sheriff of Cook County and Cook County, | ) | *(Judge Lee)* |
| | ) | |
| *Defendants*. | ) | |

# MEMORANDUM IN SUPPORT OF APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs file this memorandum to show that the Court should approve the settlement of this lawsuit.

## I. Legal Standards

The Court recently summarized the standards for approving the settlement of a class action as follows:

> After notice and a public hearing, a court may approve a settlement if it determines the settlement is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(1)–(2). In making this determination, the Court must consider a variety of factors, including: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong* [v. *Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014)]; *see* FED. R. CIV. P. 23(e)(2) (listing factors). Such an analysis does "not focus on individual components of the settlements, but rather view[s] them in their entirety in evaluating their fairness." *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996) (internal quotation marks omitted).

*In re. National Collegiate Athletic Association Student-Athlete Concussion Injury Litigation*, 332 F.R.D. 202, 217 (N.D. Ill. 2019).

Each of these favors weighs in favor of approval of the settlement reached in this case and supports a finding that the settlement is fair, reasonable, and adequate.

### A. Notice

The administrator (Atticus Administration, LLC, Mendota Heights, Minnesota) mailed 252,941 notices of the proposed settlement on March 23, 2020. These notices were sent to the last known address of all persons who entered and remained at the Jail for more than one day during the class period.

The postal service was initially unable to deliver 88,968 of these notices. The administrator substituted a forwarding address for 33,508 of these notices, leaving 33,359 as undeliverable.

Class members have also requested claim forms from class counsel: 576 such requests have to date been processed.

As of May 8, 2020, the administrator has received 21,700 valid claims and 401 opt-outs. (Counsel will update this information in advance of the fairness hearing.) This is more than a 98% approval rate, assuming that the claim forms are considered to indicate approval of the settlement and opt-out forms disapproval.

### B. Strength of Plaintiffs' Case

The Court's order on the cross-motions for summary judgment (ECF No. 338) shows that while plaintiffs have enough evidence to survive summary judgment, a trial would not be a slam-dunk for either side.

Plaintiffs could support their case with the findings of the U.S. Department of Justice in its 2008 report. *Daniel v. Cook County*, 833 F.3d 728, 742 (7th Cir. 2016). Defendants would seek to rebut the DOJ Report by arguing that the accuracy of those findings had not been litigated and that the County entered into a consent decree without any admission of liability. Defendants also would have likely argue that despite any deficiencies in providing medication to detainees, they had taken "reasonable measures" to correct any problems. *See Elizarri v. Sheriff of Cook County*, 901 F.3d 787, 790 (7th Cir. 2018). A jury might well be swayed by this approach (as it was in *Elizarri*).

Plaintiffs would also support their case with statistical evidence, discussed by the Court in its summary judgment order. (ECF No. 338 at 29-34.) This evidence, though, was not conclusive. The Court found in its summary judgment ruling that the evidence on the accuracy of the statistics was "contradictory." (*Id.* at 34.)

Class counsel believe that the class would have prevailed at trial, but recognize that any jury trial presents uncertainty, especially one where, as in this case, the jury would have been presented with complicated and difficult factual questions. Counsel's recent experience in *Elizarri v. Sheriff*, 901 F.3d 787 (7th Cir. 2018) (affirming adverse jury verdict in class action concerning the loss of detainee property at the Cook County Jail) makes plain that these are not easy cases. This consideration supports resolution of this case by settlement.

### C. The Complexity, Length, and Expense of Continued Litigation

Trying this class action lawsuit to conclusion would have been a complex, lengthy, and expensive endeavor.

First, plaintiffs had the burden to persuade a jury that asthma, diabetes, high cholesterol, HIV infection, hypertension, opiate withdrawal, seizure disorder, anxiety disorder, bipolar disorder, depression, and schizophrenia are objectively serious health needs. (ECF No. 338 at 19.)

Second, plaintiffs were required to persuade the jury that the Sheriff had notice that medication dispensation practices at Jail presented "a pervasive and substantial risk to the serious medical conditions of detainees." (ECF No. 338 at 23.)

A third triable issue of fact is whether the intake screening practice at the Jail "delayed or denied necessary treatment of the serious health needs faced by new detainees at CCJ." (ECF No. 338 at 28.) The fourth factual issue is whether the intake practices "delayed the dispensation of medication that were prescribed to detainees during intake." (ECF No. 338 at 34.)

None of these issues could be presented to the jury as a clear-cut factual dispute. All parties would have relied on circumstantial evidence and expert testimony, which might have overwhelmed the jury.

In addition, a trial might require a jury to resolve the extent, if any, to which the challenged practices caused harm to individual class members. (ECF No. 338 at 35-38.) Resolution of the damage claims of the more than 20,000 class

members who have filed claims would have been a lengthy and time-consuming process. These factors all favor final approval of the settlement.

### D. Responses to the Settlement by Class Members

The Clerk has received responses to the proposed settlement from eleven class members. Four responses ECF No. 390 (Jejuann James), ECF No. 398 (Timothy Jackson), ECF 400 (Demetrius Johnson) and ECF 401 (UC David) were requests for a claim form. The Administrator has fulfilled these requests.

One class member, Anjenai Bolden, believes the settlement to be "fair and just." (ECF No. 416.) Another class member, Asmir Disdarreric, would like to appear in court to testify about the settlement. (ECF No. 403.) Mr. Disdarreric, who is currently serving a lengthy prison sentence at the Danville Correctional Center as prisoner number M02749, does not indicate whether he opposes or supports the proposed settlement.

Four class members, out of the more 20,000 who have submitted claim forms, object to the settlement.

Eric Bernard (ECF No. 410), who is incarcerated at the Dixon Correctional Center as prisoner number R25396, believes that he should receive a separate payment for each of the seven times he recalls having been admitted to the Jail during the class period.[1] (Mr. Bernard has submitted a claim form.) This was an issue during negotiations of the settlement; the rationale to provide an award for only one

---

[1] Records produced by the Sheriff show only six arrests for Mr. Bernard during the class period.

entry to the jail was to avoid the appearance of awarding a class member for his (or her) unlawful conduct. (Mr. Bernard was convicted each of the six times that he entered the Jail during the class period.) Counsel suggests that this was a reasonable provision to include in the settlement. Mr. Bernard may not have been able to obtain competent legal advice while in the penitentiary; counsel therefore suggests that the Court allow Mr. Bernard an additional 30 days to withdraw his claim form and submit an opt-out form. Class counsel will not represent Mr. Bernard in an individual case and encourages him to accept his share of the settlement.

Darron Brewer (ECF No. 399), Bobbie Tatum (ECF No. 402), and John Wilczynski (ECF No. 417) complain about the share of the settlement for unnamed members of the class.[2] Mr. Tatum offers to withdraw his objection if he receives $20,000. (ECF No. 402 at 2.) (Mr. Tatum has returned a claim form; Mr. Brewer and Mr. Wilczynski have not.)

These objections overlook paragraph 14 of the settlement agreement that allows any class member to opt-out and litigate his (or her) individual claim. This paragraph provides as follows:

> 14. Opt Out: Notice of this proposed settlement shall advise class members that they may opt-out of this settlement and file individual actions. Defendants agree that they will not assert failure to exhaust administrative remedies as a defense to any lawsuit brought by a class member who opts out of this lawsuit. Defendants will, however, insist on the limitations on damages set by the PLRA for any person who opts out and filed an individual lawsuit while in custody. Class

---

[2] Wilczynski also complains that the proposed settlement does not include an admission of liability. (ECF No. 417 at 1.) The defendants in this case would not agree to any admission of liability.

counsel are not required to represent class members who opt-out of this settlement.

This Court recently rejectged similar objections to a class settlement because, as in this case, the Settlement Agreement allows class members to opt out and bring individual actions. *In re National Collegiate Athletic Association Student-Athlete Concussion Injury Litigation*, 332 F.R.D. 202, 220 (N.D.Ill., 2019). The Court should similarly reject the objections here.

### E. The Settlement Is Supported by the Opinion of Competent Counsel

Class counsel are experienced in civil rights cases and fully support this settlement.

One attorney for the plaintiff class (Kenneth N. Flaxman), was admitted to practice in 1972; his work in class action litigation includes *United States Parole Commission v. Geraghty*, 445 U.S. 388 (1980) (class action challenging federal parole guidelines); *Doe v. Calumet City*, 128 F.R.D. 93 (N.D.Ill. 1989) (class action challenging strip search practice of Calumet City police department); *Calvin v. Sheriff of Will County*, 405 F.Supp.2d 933 (N.D.Ill. 2005) (class action challenging strip search practice at Will County Jail), and *Fonder v. Sheriff of Kankakee County*, 823 F.3d 1144 (7th Cir. 2016) (class action challenged strip search practices at the Kankakee County Jail). Flaxman has also argued more than 200 federal appeals, including five cases in the United States Supreme Court.[3]

---

[3] In addition to *Geraghty*, Flaxman argued *Browder v. Director, Department of Corrections*, 434 U.S. 257 (1978); *Jaffee v. Redmond*, 518 U.S. 1 (1996); *Ricci v. Arlington Heights*,

Class co-counsel, Thomas G. Morrissey, is also experienced in these matters. Morrissey was admitted to practice in 1979, served five years as an Assistant Corporation Counsel for the City of Chicago, and started his private practice in 1987. His work in class action litigation includes *Hvorcik v. Sheahan*, 847 F.Supp. 1414 (N.D. Ill. 1994) (arrests on invalid warrants); *Watson v. Sheahan*, 1998 WL 708803 (N.D. Ill. 1998) (unreasonable post-arrest detention); *Gary v. Sheahan*, 188 F.3d 891 (7th Cir. 1999) (strip search of female detainees); *Bullock v. Sheahan*, 568 F. Supp. 2d 965 (N.D. Ill. 2008) (strip searching discharged detainees).

Flaxman and Morrissey have also collaborated on several class actions concerning the Cook County Jail. These cases include *Jackson v. Sheriff*, 2006 WL 3718041 (N.D. Ill 2006) (unreasonable STD testing of male detainees upon admission to the Cook County Jail); *Streeter v. Sheriff*, 256 F.R.D. 609 (N.D. Ill. 2009); (strip search of detainees before release from the Jail); *Phipps v. Sheriff*, 681 F.Supp.2d 899 (N.D. Ill. 2009) (disability discrimination against wheelchair using detainees at the Cook County Jail); *Zaborowski v. Dart*, 2011 WL 6660999 (N.D. Ill. 2011) (shackling of detainees during labor and delivery); *Smentek v. Sheriff*, 2016 WL 5939704 (N.D. Ill. 2016) (challenge to dental care at the Jail).

Flaxman and Morrissey both believe that the proposed settlement is fair, reasonable, and should be approved.

---

*cert dismissed as improvidently granted*, 523 U.S. 613 (1998), and *Wallace v. Kato*, 549 U.S. 384 (2007).

### F. The Stage of the Proceedings

The parties began settlement discussions after the Court denied the cross-motions for summary judgment. The parties filed their cross motions after 5 years of litigation, including depositions of 27 fact witnesses and 6 expert witnesses. The parties fully prepared for trial; each party was able to assess the strengths and weaknesses of their respective case.

Plaintiffs filed a motion asking for a referral for a settlement conference on July 8, 2019 (ECF No. 341), after the Court had ruled on the summary judgment motions. The Court referred the case for settlement proceedings on July 9, 2019. (ECF No. 346.)

Counsel for the parties met with Magistrate Judge Andrew Rodovich on September 5, 2019. (ECF No. 367.) The Magistrate Judge was very persuasive and proactive, reminding all counsel of the risks, uncertainty, delay, and expense of continuing the litigation and encouraging a compromise.

The proposal that emerged from the settlement conference was approved by the Cook County Board in December 2, 2019. It was reduced to writing and received preliminary approval from the Court on December 17, 2019. (ECF No. 388.)

## II. The Class Has Received Appropriate Notice

As explained above at 2, the Administrator mailed notice of the proposed settlement to 219,433 of the 252,941 persons eligible to particulate in the case. To date, nearly ten percent of those potentially eligible to participate in the case (21,700 out of 219,433) have returned claim forms.

The return rate is reasonable for this case. Each person who entered the Jail during the class period is not a class member – the class includes only persons who entered the Jail, who had been taking medication prescribed for a serious health need, and who did not receive that medication within 24 hours after entry into the Jail.

Class counsel negotiated the settlement after estimating the potential size of the class as slightly more than 35,000 persons.[4] A return rate of more than 60% (21,700 out of 35,466) is exceptional in this type of class action, where participation rates usually range from 15% to 40%.[5] Much lower participation rates were reported in *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 100 (E.D.N.Y. 2015) (15%), and in *In re OnlineDVBD-Rental Antitrust Litig.*, 779 F.3d 934, 944-45 (9th Cir. 2015) (less than 4%).

## III.  The Settlement Provides Reasonable Compensation

The proposed agreement establishes a "settlement fund" in the amount of $7,500,000 (seven million five hundred thousand dollars) to cover damages for class members, incentive awards, fees and costs of counsel, and administration of this settlement.

---

[4] Counsel estimated the number of class members from the data analyzed by expert witness Dr. Whitman and negotiated the settlement on the hypothesis that the class consisted of not more than 35,466 persons.

[5] The participation rate in *Doe v. Calumet City*, 128 F.R.D. 93 (N.D. Ill. 1989), was about 25%; there was about a 20% return rate *Calvin v. Sheriff of Will County*, 405 F. Supp. 2d 933 (N.D. Ill. 2005). The rate was about 40% in the recently settled dental class action, *Smentek v. Sheriff*, 09-cv-529 (N.D. Ill.).

The settlement includes all persons who entered the Jail between August 3, 2005 and August 30, 2013, who were taking prescription medication for a serious health need, and who did not receive that medication within 24 after entry into the Jail. The starting date of August 3, 2005 is two years before Michael Parish, the original named plaintiff, filed this lawsuit; the ending date is when the Medical Monitor in the consent decree litigation found that the Jail was in substantial compliance with the medication provisions of the consent decree.

The settlement provides that Class members will receive a higher award if they were admitted to the Jail before January 1, 2011, when, as shown in the statistical data plaintiffs submitted with the summary judgment motion, the problems with providing medication to new admittees were greatly reduced. Based on the number of returned claim forms, awards will range from $100 (for those who entered the Jail after January 1, 2011) to $200 (for those who entered before that date). This will leave a buffer for the late claims contemplated by the parties paragraph 13 of the settlement agreement (ECF No. 385-1 at 10):

> [C]lass members may submit claim forms in the nine-month period following the payment of the first installment. Payment shall be made to these "second wave" claimants at the same amount as paid in the first installment to the extent possible: if the total amount of these second wave payments exceeds the amount remaining after payment of the first installment, the amount to be paid to each "second wave claimant" shall be proportionately reduced.

The settlement agreement also provides for incentive awards to the named plaintiffs and to those class members who served as "exemplars" and appeared for deposition. These awards range from $5,000 (for each exemplar), to $15,000 for the

named plaintiffs other than Parish, who will receive $25,000. These proposed incentive awards are in line with incentive awards in other comparable cases. For example, in the recently settled dental class action, *Smentek v. Sheriff*, 09-cv-529 (N.D. Ill.), $25,000 was paid to the estate of the original plaintiff; each of the three additional plaintiffs received $15,000; class members received awards ranging from $100 to $750. Similarly, each of the three named plaintiffs in the STD testing case, *Jackson v. Sheriff*, 06-cv-493, received $25,000 while each class member received $200.

The individual awards reflect that each recipient provided a service to the class by answering interrogatories and appearing for a deposition. In addition, each could have brought an individual case and likely received compensation equal to or greater than what he (or she) will receive in the settlement.

### IV.  The Agreed Upon Fees and Costs Are Reasonable

After full agreement had been reached on the monetary relief for the class, the parties, with the assistance of Magistrate Judge Rodovich, negotiated attorneys' fees and costs. The parties agreed that subject to the approval of the Court, class counsel will, without objection from Defendants, be reimbursed for costs, to be paid from the "settlement fund," in the amount actually expended not to exceed $250,000 (two hundred and fifty thousand dollars), and, again subject to approval of the Court and without objection from Defendants, receive attorneys' fees from the "settlement fund" in the amount of $2,500,000 (two million five hundred

thousand dollars), or one-third of the "settlement fund." The Court should approve this agreement.

The out-of-pocket costs include class notice, deposition expenses, copying expense, and travel for depositions to New York (plaintiff's expert Dr. Holland) and Colorado (defendant's expert Dr. Sander). Counsel also incurred substantial expense in corresponding with class members during the litigation, sending more than 22,000 letters to class members. Class counsel will submit a list of these expenses to defense counsel before accepting reimbursement.

The proposed fee award is one-third of the total amount to be paid by defendants. This percentage would be reasonable in a consumer class-action: the Seventh Circuit suggested in *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014) – a case where claims were filed by only .25% of those eligible – that fees for class counsel "should not exceed a third or at most a half of the total amount of money going to class members and their counsel." *Id.* at 782. This percentage is likewise reasonable in this civil rights case, where nearly 30% of those eligible to participate have filed claims.

Civil rights cases are typically litigated on a contingent basis, where the lawyer agrees to accept a percentage of the recovery as his (or her) fee, This percentage ranges from the one-third, *Freeman v. Mayer*, 95 F.3d 569, 570 (7th Cir. 1996) to 40%. *Kirchoff v. Flynn*, 786 F.2d 320, 322 (7th Cir. 1986). The fee contract may also include that, in addition to the 40% contingency, statutory fees will be

paid to counsel. *Pickett v. Sheridan Health Care Center*, 664 F.3d 632 (7th Cir. 2011).

"[A] lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). This is because "persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *Id.*, *citing Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 392 (1970).

The rule in this circuit is that "when deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Marketing Litigation*, 264 F.3d 712, 718 (7th Cir. 2001), o*pinion following remand*, 325 F.3d 974 (7th Cir. 2003). "The object in awarding a reasonable attorney's fee … is to simulate the market … The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client." *In re Continental Securities Litigation*, 962 F.2d 566, 572 (7th Cir. 1992).

The defendants are aware of the significant amount of time class counsel has already invested in this case as well as the time that will be required to resolve all communications from class members. Defendants have agreed not to oppose

the request for fees of one-third of the settlement fund, and it should be approved by the Court.

## V. Conclusion

The Court should therefore approve the proposed settlement of this class action.

Respectfully submitted,

/s/ Kenneth N. Flaxman
Kenneth N. Flaxman
ARDC No. 830399
200 S. Michigan Ave, Ste 201
Chicago, IL 60604
(312) 427-3200

*an attorney for the plaintiff class*